**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| TECH SAFETY LINES, INC. § § Plaintiff, § § § CIVIL ACTION NO. 3:23-CV-1015 v. § § MALLORY SAFETY AND § SUPPLY, LLC d/b/a ENSA § § § Defendants. § | |

# ORIGINAL COMPLAINT

Plaintiff Tech Safety Lines, Inc. files this Original Complaint against Defendant Mallory Safety and Supply, LLC d/b/a ENSA, and respectfully states as follows:

## I. PARTIES

1. Plaintiff Tech Safety Lines, Inc. ("Tech Safety Lines") is a corporation duly organized under the laws of Texas with its principal place of business at 3350 Wiley Post Road, Carrollton, Texas 75006.

2. Defendant Mallory Safety and Supply, LLC d/b/a ENSA ("ENSA") is a limited liability company organized under the laws of Oregon with a principal place of business at 3241 NW Industrial Street, Portland, Oregon 97210. ENSA may be served through its registered agent, Brian Loy, at 9187 Winkler Drive, Houston, Texas 77017.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), (b) because this action involves claims of trademark infringement arising under federal law as well as related claims of unfair competition.

**PLAINTIFF'S ORIGINAL PETITION**

4. This Court has personal jurisdiction over ENSA because ENSA has committed acts which have reasonably foreseeable consequences in Texas, including by advertising infringing services to Texas residents, deceiving Texas residents through false representations regarding the nature and quality of its services, and engaging in business transactions with Texas residents, including through unauthorized use of Tech Safety Lines' trademarks. Defendants also own and/or operate an interactive website where they advertise their services, including through unauthorized use of Tech Safety Lines' trademarks, and where Texas residents can and, on information and belief, have engaged in transactions with ENSA. ENSA also conducts business in the state of Texas, maintains at least two physical locations in Texas, and maintains a registered agent for service of process in Texas.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Tech Safety Lines' claims occurred in this District. ENSA has marketed and sold infringing services to Texas residents located in this District and knowingly caused harm to Tech Safety Lines, which is located in this district. Venue is further proper in this District because ENSA is subject to personal jurisdiction in this District and deemed to reside here. *See* 28 U.S.C. § 1391(b)(1), (c).

### III.   FACTUAL ALLEGATIONS

**A.   Tech Safety Lines and Its Trademarks**

6. Tech Safety Lines is a woman-owned business that was founded in the wake of the September 11th attacks to create a means for people to safely escape from dangerous situations while working on elevated structures.

7. Today, Tech Safety Lines sells numerous patented safety products, including its popular SRK-11® and SRK-15® self-rescue kits and SPARK assisted rescue kits, which kits are primarily use by technicians working at heights on structures used for wind energy generation.

8. Tech Safety Lines is an industry-leading supplier of rescue kits, supplying rescue kits to technicians and companies worldwide. Tech Safety Lines currently has more than 45,000 rescue kits in the field in 35 different countries.

9. The SRK-11® and SRK-15® self-rescue kits are designed to be carried by an individual working at heights. When an emergency, such as a fire, occurs requiring evacuation, the self-rescue kit's components can be anchored to a secure anchor, and the trained evacuee can operate the kit's Military Compact Descender controlled-descent device to safely descend on the kit's single-use, fire resistant rope. The SPARK assisted rescue kit works in conjunction with the SRK-11® and SRK-15® and is used in assisted rescue situations, including when the party to be rescued is incapacitated. Images of the SRK-11®, SRK-15® and SPARK rescue kits are shown below:



10. Saving lives through safe evacuations is Tech Safety Lines' top priority, and proper training by Authorized Trainers is essential to ensure the safe and effective operation of Tech Safety Lines' rescue kits in emergency situations. Accordingly, to ensure that its products are used

in a proper manner when deployed in the field in order to optimize life-saving outcomes, Tech Safety Lines mandates strict training requirements before one of its rescue kits can be purchased or used in the field.

11. First, Tech Safety Lines will not sell one of its rescue kits to any person until they have completed training with an *authorized* Tech Safety Lines trainer ("Authorized Trainer") in a controlled, safe environment. Tech Safety Lines strictly enforces this requirement, which is set forth in its product manuals, training manuals, and student agreements. By way of example, Tech Safety Lines' Student End User Agreement states:

> **GLOBAL TRAINING & EQUIPMENT POLICY**
>
> Tech Safety Lines, Inc. (TSL) only sells our patented equipment to those that have successfully completed training, either directly from a TSL instructor, or by a TSL Authorized Instructor for their own internal training, or by a licensed 3rd party training company. Wallet cards are not transferable from company to company and are only valid for the employer listed on the wallet card.

12. Similarly, Tech Safety Lines' product manuals state as follows: "Prior to use, the user must engage in practical training conducted by an Authorized Trainer in a safe, controlled environment."

13. In addition to requiring initial authorized training before rescue kits can be purchased, Tech Safety Lines requires that users participate in annual refresher training. Tech Safety Lines' rescue kit user manuals specifically state as follows: "Users are required to have annual refresher trainings, by an Authorized Trainer, after their initial training."

14. To ensure safe and effective operation of its rescue kits, Tech Safety Lines offers training services at its world class, state-of-the-art training facilities in Carrollton, Texas using certified Tech Safety Lines trainers, which include members of the Dallas Fire Department's Technical Rescue Team. Tech Safety Lines will also send its certified trainers to customer locations for training.

15. In addition to offering training services through its own certified trainers, Tech Safety Lines offers a Train-the-Trainer program, whereby it offers rigorous, in-depth training to third-party professionals so that they can become Authorized Trainers.

16. In order to ensure that its products are properly used in the field to optimize safe evacuation outcomes, Tech Safety Lines does not permit or recognize training conducted by unauthorized trainers. Tech Safety Lines enforces this safety requirement by (i) refusing to sell equipment to parties that have not completed training with an Authorized Trainer, and (ii) voiding all warranties for parties that use unauthorized trainers. Tech Safety Lines' SRK-11® rescue kit manual states as follows: "Third party training is not recognized by TSL and the use of such services renders all warranties, both express or implied, null and void."

17. Tech Safety Lines' rescue training, when conducted by Authorized Trainers, not only instructs trainees on the technical requirements and safe use of Tech Safety Lines' rescue kits, including its SRK-11®, SRK-15® and SPARK rescue kits, but also complies with international standards, including those set by the Global Wind Organization ("GWO"). In 2022, Tech Safety Lines was recognized as the Training Center of the Year for the Americas by GWO.

18. Not only must students be trained on the technical aspects and safe use of Tech Safety Lines' rescue kits by Authorized Trainers, but the training must be conducted in a proper manner to ensure that the single-use rope in the rescue kits is not damaged prior to deployment in the field.

19. To ensure that Tech Safety Lines' rescue kits are operational for field use, Tech Safety Lines and its Authorized Trainers do not train using customer-issued rescue kits. Rather, Tech Safety Lines' Authorized Trainers only train using designated Training Kits with multi-use rope supported by back-up fall arrest rope.

20. Throughout its training and product manuals, with which Authorized Trainers are well familiar, Tech Safety Lines repeatedly warns that its rescue kit rope is only intended for single use and that, once used, rescue kits must be returned to Tech Safety Line for installation of new, replacement rope. By way of example, Tech Safety Lines' SRK-11® Manual states:

- "**WARNING: Serious injury or death can result if using the product or any component in an undesigned manner.**"

- "Rope failure may result from improper storage, handling, or use other than intended function."

- "The rope is intended for ONE USE ONLY. After each use, return entire **SRK-11®** to Tech Safety Lines for installation of new rope."

- "Although the **SRK-11®** is designed for one time emergency use, designated Training Kits should be put into service for training purposes only."

- "**Training Rope should never be used for emergency descent. Only new, unused rope shall be utilized in emergencies.**"

21. Tech Safety Lines has used its registered trademark, TECH SAFETY LINES, in association with the marketing and sale of its rescue kits, related equipment, and training services since 2002. Tech Safety Lines owns U.S. Trademark Registration No. 4,439,466 for its TECH SAFETY LINES mark, which mark has achieved incontestable status.

22. Tech Safety Lines has used its registered trademark, SRK-11®, in association with the marketing and sale of its patented rescue kits and associated training services since 2006. Tech Safety Lines owns U.S. Trademark Registration No. 4,432,563 for its SRK-11® mark, which mark has achieved incontestable status.

23. Tech Safety Lines has used its registered trademark, SRK-15®, in association with the marketing and sale of its patented rescue kits and associated training services since 2015. Tech Safety Lines owns U.S. Trademark Registration No. 5,075,022 for its SRK-15® mark, which mark has achieved incontestable status.

24. Tech Safety Lines has also established considerable common law rights in its SPARK mark through continuous use of the mark in commerce in association with its rescue kits and associated training services.

25. Tech Safety Lines has developed considerable valuable goodwill and brand recognition in association with the TECH SAFETY LINES, SRK-11®, SRK-15®, and SPARK marks (the "Tech Safety Lines Marks") throughout the United States and internationally, including in Texas and this District, where Tech Safety Lines is headquartered. The consuming public has thus come to associate The Tech Safety Lines Marks with Tech Safety Lines' high-quality rescue kits, training services, and strict quality control requirements.

26. Tech Safety Lines has expended considerable amounts of time, skill, labor, and money over the course of several years designing, developing, promoting, and protecting its rights in the Tech Safety Lines Marks and its top-of-line safety products and training services.

**B.     Defendants' Infringement**

27. In order to capitalize on the brand value and international goodwill associated with the Tech Safety Lines Marks, ENSA recently began offering unauthorized training services on Tech Safety Lines' rescue kits.

28. On the training registration page of its website, without approval or authorization from Tech Safety Lines, ENSA offered customers training on Tech Safety Lines' rescue kits, including, as shown below, its SRK-11® and SPARK kits:



29.     In addition to offering training on Tech Safety Lines' rescue kits through its website, ENSA elsewhere represented to consumers, on information and belief, expressly or by implication, that it was authorized to train students on Tech Safety Lines' rescue kits and that ENSA training would qualify customers to initially purchase or maintain required annual certification on Tech Safety Lines' rescue kits.

30.     Although unauthorized to train on Tech Safety Lines' rescue kits, ENSA has also, on information and belief, trained students using their own Tech Safety Lines rescue kits with single-use rope, even though training on the rescue kits is strictly prohibited by Tech Safety Lines' product manuals—with which an Authorized Trainer would be well familiar—and voids all warranties.

31.     ENSA's deceptive actions and misrepresentations thus endanger end users of Tech Safety Lines' rescue kits. Not only does ENSA render the rescue kits potentially unsafe and

unusable in the field by using the single-use rope from field kits—rather than Tech Safety Lines Training Kits, which ENSA does not have—but ENSA is also unqualified to train users regarding the technical specifications, proper handling, proper storage, and proper use in emergency situations of Tech Safety Lines rescue kits.

32. Tech Safety Lines has no way to ensure that ENSA's unauthorized training meets Tech Safety Lines' high technical and safety standards in order to prepare students for safe and effective use of Tech Safety Lines' equipment in the field.

33. ENSA's misrepresentations and unauthorized use of the Tech Safety Lines' Marks has already caused consumer confusion. Consumers have contacted Tech Safety Lines to purchase Tech Safety Lines' rescue kits and been surprised and disappointed to learn that ENSA's unauthorized training did not entitle them to purchase Tech Safety Lines' rescue kits.

34. ENSA's misrepresentation and unauthorized use of the Tech Safety Lines' Marks are likely to further confuse consumers into believing that ENSA is an Authorized Trainer (for initial purchase or recertification), that ENSA training will not void Tech Safety Lines' equipment warranties, that ENSA's training is endorsed or approved by Tech Safety Lines, and that Tech Safety Lines rescue kits used during ENSA training can be deployed in the field.

35. By falsely holding itself out as an Authorized Trainer on Tech Safety Lines rescue kits, ENSA is not only harming those who have purchased or intend to purchase or use Tech Safety Lines rescue kits, but is also depriving Tech Safety Lines and its Authorized Trainers of revenues for training services.

36. As a consequence of ENSA's misrepresentations and unauthorized use of the Tech Safety Lines Marks to offer unauthorized training services, Tech Safety Lines has suffered and will continue to suffer irreparable harm, the exact nature, extent, and amount of which cannot be ascertained at this time. Therefore, in addition to damages, Tech Safety Lines is also entitled to preliminary and permanent injunctive relief.

## IV.  CAUSES OF ACTION

### Count One: Trademark Infringement, 15 U.S.C. § 1114

37. Tech Safety Lines reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

38. Tech Safety Lines owns the registered marks TECH SAFETY LINES®, SRK-11®, and SRK-15® (the "Registered Marks"), among others.

39. Tech Safety Lines has continuously used the Registered Marks in commerce and has established considerable brand recognition and goodwill with respect to the Registered Marks.

40. ENSA has advertised, sold, and offered to sell unauthorized training services throughout the United States and in Texas using one or more of the Registered Marks in a manner that has caused and is likely to continue to cause consumer confusion, mistake, or deception in violation of 15 U.S.C. § 1114.

41. Tech Safety Lines has no control over the nature or quality of the services sold and offered for sale by ENSA.  Any failure, neglect, or default of ENSA in providing quality services to consumers will reflect adversely upon Tech Safety Lines as the perceived source of origin and/or approval of the services, and may also have potential to harm the consuming public.

42. Tech Safety Lines has been damaged and is likely to continue to be damaged by ENSA's infringement of the Registered Marks, and Tech Safety Lines seeks and is entitled to recover its actual damages, Defendants' profits from the infringement, and the costs of this action pursuant to 15 U.S.C. § 1117(a).

43. This case is exceptional in light of ENSA's willful use of the Registered Marks to sell and offer to sell its services throughout the United States despite the safety risks involved and Tech Safety Lines' widespread and continuous use of the Registered Marks for several years. Because this case is exceptional, Tech Safety Lines is also entitled to recover its attorneys' fees incurred pursuing this action pursuant to 15 U.S.C. § 1117(a).

44. ENSA's activities have caused and, unless enjoined, will continue to cause irreparable injury to Tech Safety Lines and the goodwill Tech Safety Lines has established in its products, services, brand, and the Registered Marks over the years.

***Count Two: False Designation of Origin, 15 U.S.C. § 1125(a)(1)(A)***

45. Tech Safety Lines reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

46. Tech Safety Lines has continuously used the Tech Safety Lines Marks in commerce and has established considerable brand recognition and goodwill with respect to the Tech Safety Lines Marks.

47. ENSA has advertised, sold, and offered to sell services throughout the United States and in Texas through use and display of one or more of the Tech Safety Lines Marks, including through ENSA's website, through which ENSA markets its services using the Tech Safety Lines Marks throughout the country and to Texas residents.

48. ENSA's unauthorized use of the Tech Safety Lines Marks is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, and association of ENSA with Tech Safety Lines, Tech Safety Lines' products and services, and as to the origin, sponsorship, or approval of ENSA and its services by Tech Safety Lines in violation of 15 U.S.C. § 1125(a)(1)(A), including by deceiving consumers into believing that ENSA is authorized to train on Tech Safety Lines' rescue kits.

49. Tech Safety Lines has no control over the nature or quality of the services sold and offered for sale by ENSA. Any failure, neglect, or default of ENSA in providing quality services to consumers will reflect adversely upon Tech Safety Lines as the perceived source of origin and/or approval of the services, and also has potential to harm consumers.

50. ENSA's activities have caused and, unless enjoined, will continue to cause irreparable injury to Tech Safety Lines and the goodwill Tech Safety Lines has established in its services, brand, and the Tech Safety Lines Marks over the years.

51. Tech Safety Lines has suffered and will continue to suffer substantial damage to its brand, reputation, and goodwill, and Tech Safety Lines seeks and is entitled to recover actual damages, ENSA's profits from the infringement, and the costs of this action pursuant to 15 U.S.C. § 1117(a).

52. ENSA's conduct constitutes an "exceptional" case under 15 U.S.C. § 1117(a), and Tech Safety Lines is entitled to recover its attorneys' fees incurred pursuing this action.

### *Count Three: False Advertising, 15 U.S.C. § 1125(a)(1)(B)*

53. Tech Safety Lines reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

54. Tech Safety Lines has continuously used the Tech Safety Lines Marks in commerce and has established considerable brand recognition and goodwill with respect to the Tech Safety Lines Marks.

55. Through commercial advertising and promotion, including through its interactive website, ENSA has advertised and promoted services throughout the United States and in Texas misrepresenting the nature, characteristics, and qualities of its services, including by suggesting to the consuming public that ENSA is authorized and certified to train consumers on the use and safe operation of Tech Safety Lines rescue kits.

56. ENSA's false and misleading statements regarding the nature of its services have deceived and have potential to deceive the consuming public in violation of 15 U.S.C. § 1125(a)(1)(B), including by deceiving consumers into believing that ENSA is authorized by Tech Safety Lines to train consumers on the safe and effective use Tech Safety Lines' rescue kits and to use such rescue kits in training sessions.

57. Tech Safety Lines has no control over the nature or quality of the services sold and offered for sale by ENSA. Any failure, neglect, or default of ENSA in providing quality services to consumers will reflect adversely upon Tech Safety Lines as the perceived source of origin and/or approval of the services, and also has potential to harm consumers.

58. ENSA's activities have caused and, unless enjoined, will continue to cause irreparable injury to Tech Safety Lines and the goodwill Tech Safety Lines has established in its services, brand, and the Tech Safety Lines Marks over the years.

59. Tech Safety Lines has suffered and will continue to suffer substantial damage to its brand, reputation, and goodwill, and Tech Safety Lines seeks and is entitled to recover actual

damages, ENSA's profits from the infringement, and the costs of this action pursuant to 15 U.S.C. § 1117(a).

60. ENSA's conduct constitutes an "exceptional" case under 15 U.S.C. § 1117(a), and Tech Safety Lines is entitled to recover its attorneys' fees incurred pursuing this action.

### *Count Four: Common Law Trademark Infringement*

61. Tech Safety Lines reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

62. Tech Safety Lines has been using the Tech Safety Lines Marks throughout the United States continuously for several years in association with its top-of-line rescue kits and training services.

63. Without authorization, ENSA has been using the Tech Safety Lines Marks in connection with its unauthorized training services.

64. ENSA's use of the Tech Safety Lines Marks or any confusingly similar variations thereof, is likely to cause confusion, deception, and mistake by creating the false and misleading impression that ENSA services are approved, authorized, connected with, or sponsored by Tech Safety Lines, when they are not.

65. ENSA's actions demonstrate a willful intent to trade on the goodwill associated with the Tech Safety Lines Marks.

66. As such, Defendants' activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Tech Safety Lines' goodwill and reputation, for which Tech Safety Lines has no adequate remedy at law. Furthermore, Tech Safety Lines has suffered and will continue to suffer substantial damages while ENSA has reaped substantial profits.

67. Tech Safety Lines is entitled to injunctive relief and to recover ENSA's profits, as well as ENSA's actual damages and costs and fees incurred in connection with this action, in an amount to be determined at trial.

### *Count Five: Unfair Competition By Misappropriation*

68. Tech Safety Lines reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

69. Tech Safety Lines developed the Tech Safety Lines Marks through the expenditure of extensive time, skill, labor, and money. In connection with the marketing and sale of its services by use of the Tech Safety Lines Marks and otherwise suggesting that ENSA is affiliated with, authorized by, approved by, connected with, or sponsored by Tech Safety Lines, ENSA has exploited the reputation and goodwill associated with the Tech Safety Lines Marks in competition with Tech Safety Lines to gain a competitive advantage.

70. By these actions, ENSA has gained a financial benefit for itself and has caused harm to Tech Safety Lines' brand, goodwill, and reputation, causing Tech Safety Lines to suffer damages.

71. Tech Safety Lines is entitled to injunctive relief and to recover ENSA's profits, as well as Tech Safety Lines' actual damages and costs and fees incurred in connection with this action, in an amount to be determined at trial.

### *Count Six: Tortious Interference with Prospective Relations*

72. Tech Safety Lines reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

73. There was a reasonable probability that Tech Safety Lines would have entered into transactions to sell rescue kits to customers and to provide pre-purchase and recertification training to customers.

74. ENSA interfered with these prospective relationships by misrepresenting itself, expressly or by implication, to be an Authorized Trainer, including by unauthorized use of the Tech Safety Lines Marks, in order to sell unauthorized training services to prospective Tech Safety Lines customers.

75. As a result of ENSA's actions, Tech Safety Lines lost the opportunity to sell rescue kits to prospective customers, as well as pre-purchase and recertification training.

76. Tech Safety Lines has suffered actual damages as a result of ENSA's actions.

## V. REQUEST FOR INJUNCTIVE RELIEF

77. Tech Safety Lines reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

78. ENSA has violated 15 U.S.C. §§ 1114 and 1125(a)(1)(A), (B), committed common law trademark infringement, and unfairly competed with Tech Safety Lines under Texas law, and Tech Safety Lines is therefore entitled to injunctive relief under 15 U.S.C. § 1116 and under Texas law.

79. Tech Safety Lines requests that the Court issue preliminary and permanent injunctive relief enjoining ENSA and its officers, directors, agents, employees, successors, assigns and attorneys, and all other persons and entities in active concert or participation with ENSA who receive notice of the injunction, from doing, aiding, causing or abetting the following:

(a) engaging in any acts or activities directly or indirectly calculated to trade upon the Tech Safety Lines Marks or Tech Safety Lines' reputation and goodwill, including

any further use of the Tech Safety Lines Marks or any other marks that are identical or confusingly similar to the Tech Safety Lines Marks in any physical or electronic medium, including, but not limited to websites, internet metadata, service offerings, printed documents, and other written, audio, or visual materials of any nature;

(b) directly or indirectly holding themselves out to be certified or authorized Tech Safety Lines trainers, certified or authorized to train on the proper use, inspection, storage and technical specifications of Tech Safety Lines rescue kits, or authorized to offer any training required by Tech Safety Lines, including pre-purchase and recertification training.

(c) directly or indirectly using any false designation of origin, false or misleading description of fact, or false or misleading representation of fact in connection with the sale of ENSA's services, including any representation that ENSA is affiliated with, authorized by, approved by, or sponsored by Tech Safety Lines;

(d) passing off, inducing or enabling others to sell or pass off, as products or services produced by or for or distributed with authorization of Tech Safety Lines, any product or service that is not the product or service of Tech Safety Lines, is not produced under the control or supervision of Tech Safety Lines, is not approved by Tech Safety Lines, or is not distributed with Tech Safety Lines' express authorization;

(e) training or offering to train customers regarding the use, storage, inspection, or technical specifications of Tech Safety Lines' rescue kits without Tech Safety Lines' express authorization; and

(f) otherwise engaging in competition unfairly.

80. Tech Safety Lines and the consuming public will suffer immediate and irreparable damage, injury and harm for which there is no adequate remedy at law if ENSA is not immediately and permanently enjoined from the conduct listed above.

81. Public policy favors the protection of intellectual property rights and the prevention of unfair competition, and any injunctive relief granted herein will therefore be in accordance with public policy.

82. The potential damage to Tech Safety Lines and the consuming public if the injunctive relief requested herein is not granted far outweighs any harm that ENSA will suffer as a result of the injunctive relief requested. Immediate and permanent injunctive relief is therefore appropriate.

## VI.  JURY DEMAND

83. Tech Safety Lines hereby demands a trial by jury of all claims so triable.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Tech Safety Lines prays that the Court grant the following relief:

1. Order that ENSA and its officers, directors, agents, employees, successors, assigns and attorneys, and all persons and entities in active concert or participation with ENSA who receive notice of the injunction, be enjoined and restrained preliminarily during the pendency of this action, and then permanently, from doing, aiding, causing, or abetting the acts outlined in paragraph 82 of this Complaint.

2. Order ENSA to file with the Court and serve upon counsel for Tech Safety Lines within thirty (30) days after the entry of the injunction prayed for in this Complaint, a written report, sworn to under oath, setting forth in detail the manner and form in which ENSA has complied with the injunction;

3. Award Tech Safety Lines its actual damages, which may be trebled in the Court's discretion, resulting from ENSA's infringement;

4. Order ENSA to account for and pay to Tech Safety Lines all profits derived by reason of ENSA's acts alleged in this Complaint and to disgorge such profits to Tech Safety Lines;

6. Find that this is an "exceptional" case pursuant to 15 U.S.C. § 1117;

7. Award Tech Safety Lines its costs of suit, including reasonable and necessary attorneys' fees and expenses pursuant to 15 U.S.C. § 1117;

8. Award Tech Safety Lines pre-judgment and post-judgment interest at the highest legal rate on all sums awarded in the Court's judgment; and

9. Award Tech Safety Lines such other and further relief to which it may be entitled at law or in equity.

Respectfully submitted,

HAYNES AND BOONE, L.L.P.

/s/ *Jason P. Bloom*
Jason P. Bloom
jason.bloom@haynesboone.com
State Bar No. 24045511
One Victory Park
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940

Michael J. Lambert
michael.lambert@haynesboone.com
State Bar No. 24128020
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone: (512) 867-8400
Facsimile: (512) 867-8470

**ATTORNEYS FOR PLAINTIFF TECH SAFETY LINES, INC.**