UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TECH SAFETY LINES, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:23-CV-1015-X |
| | § | |
| MALLORY SAFETY AND SUPPLY, | § | |
| LLC d/b/a ENSA, and AEGIS | § | |
| ONSHORE, INC., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Mallory Safety and Supply LLC's ("ENSA") and Aegis Onshore, Inc.'s ("Aegis") motions to dismiss. (Docs. 58, 59). After reviewing the motions, responses, replies, and applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the motions. (Docs. 58, 59). Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff Tech Safety Lines, Inc.'s ("TSL") fraud-by-nondisclosure and fraudulent-inducement claims. If TSL wishes to pursue these two claims, it must file an amended complaint no later than 28 days from the date of this order. All other claims remain.

### I. Background

This is a multi-facet business competition and infringement suit. TSL is a Texas-based business that sells numerous patented safety products. This suit revolves around two of TSL's patented products: "Rescue Kits" and "Training Kits."

1

Rescue Kits are primarily used by technicians working at heights on structures used for wind energy generation. Training Kits are used to train people in using Rescue Kits. In total, TSL has sold more than 45,000 Rescue Kits in 35 different countries.

In protecting its product, TSL will not sell Rescue Kits unless the purchaser has completed a training in using Rescue Kits. TSL offers Rescue Kit training (1) at its own facility in Carrollton, Texas, (2) sending a certified trainer to a purchaser's location, or (3) through a program to train third-party professionals so they can become an authorized trainer (Train-the-Trainer). Companies commonly buy the Train-the-Trainer program so one employee may conduct Rescue Kit certification and recertification training to other employees in-house. Relevant here, while a purchaser of TSL's Train-the-Trainer program may train other inhouse-employees in the proper use of Rescue Kits, TSL does not permit purchasers of a Train-the-Trainer program to resell the Train-the-Trainer program itself to a third-party.

Defendants ENSA and Aegis are alleged to have violated federal and state law in multiple ways. ENSA is alleged to have offered unauthorized training services on TSL Rescue Kits on premises, remotely, and by offering TSL's Train-the-Trainer program for purchase. And Aegis is alleged to be somewhat of a middleman between TSL and ENSA allowing ENSA to distribute TSL's copyrighted materials discreetly. After allegedly catching on to this covert operation, TSL sent a cease-and-desist letter to ENSA regarding its "infringing use" of TSL's marks. TSL now brings an eleven-count suit in this Court seeking monetary and injunctive relief for ENSA and Aegis's

2

allegedly unlawful actions in sharing Train-the-Trainer materials between the two parties.  ENSA and Aegis have filed separate motions to dismiss.

## II. Legal Standard

Federal Rule of Civil Procedure 8 requires a pleading to state "a short and plain statement of the claim showing that the pleader is entitled to relief."[1]  The pleading standard does not require detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[2]  For a complaint to survive a motion to dismiss under Rule 12(b)(6), it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[3]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[4]  For purposes of a motion to dismiss, courts must accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff.[5]  "In other words, a motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts."[6]

---

[1] FED. R. CIV. P. 8(a)(2).

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] *Id.*

[4] *Id.*

[5] *Muhammad v. Dall. Cnty. Cmty. Supervision & Corrs. Dep't*, 479 F.3d 377, 379 (5th Cir. 2007).

[6] *Ramming v. U.S.*, 281 F.3d 158, 161–62 (5th Cir. 2001) (cleaned up).

For fraud claims, Rule 9(b) requires a heightened pleading standard. To avoid dismissal of a fraud claim, plaintiffs must "state with particularity the circumstances constituting fraud or mistake."[7] "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."[8]

### III. Analysis

Both ENSA and Aegis have filed separate motions to dismiss seeking to dismiss all of TSL's eleven claims. The Court will address each in turn.

### A. Federal and State Law Trademark Claims

In one fell swoop, ENSA moves to dismiss five of TSL's claims—trademark infringement, false designation of origin, false advertising, common law trademark infringement, and unfair competition by misappropriation—arguing that each of these claims are based upon the same conclusory allegations.[9] In response, TSL argues that its sufficiently pled each of these lumped-together claims.[10] The Court agrees with TSL.

As an initial matter, because ENSA states that "TSL's claims under federal law . . . should be equally dispositive of TSL's claims under Texas law,"[11] the Court will address solely TSL's federal law claims and not opine directly on TSL's common

---

[7] FED. R. CIV. P. 9(B).

[8] *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (cleaned up).

[9] Doc. 58 at 7–9.

[10] Doc. 62 at 15–20.

[11] Doc. 58 at 8.

law claims.  As to the federal law claims, the Court holds that TSL has sufficiently pled its federal law claims.

The Court will begin with TSL's trademark infringement claims.  To plead a trademark infringement claim, a plaintiff must allege (1) "that it possesses a legally protectable trademark and (2) [plaintiff's] use of [the] trademark creates a likelihood of confusion as to source, affiliation, or sponsorship."[12]  TSL's operative complaint satisfies each factor.  Simply stated, TSL pled that it owns the marks[13] and TSL has also sufficiently pled that Defendants have created a likelihood of confusion.[14]  For similar reasons, the Court holds that TSL's complaint plausibly alleges a false designation of origin claim.[15]  Therefore, by extension, TSL has plausibly pled its trademark infringement, false designation of origin, false advertising,[16] common law trademark infringement, and unfair competition by misappropriation claims.

---

[12] *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017).

[13] *See* Doc. 45 at 8 ("Tech Safety Lines owns U.S. Trademark Registration No. 4,439,466 for its TECH SAFETY LINES mark.").

[14] *Id.* at 11, 21, 23.  Additionally, the Court declines to apply the "fact intensive" nominative-fair-use doctrine to TSL's trademark claims at this stage of the proceeding, especially since ENSA hasn't cited a single case where a court applies this doctrine at the motion-to-dismiss stage.  *See Sherri Hill, Inc. v. Amarra USA LLC*, No. 1:20-CV-0350, 2021 WL 8083342, at *8 (W.D. Tex. July 26, 2021).

[15] "[T]he elements of common law trademark infringement and false designation of origin are the same as those under the Lanham Act."  *Massimo Motor Sports, LLC v. Shandong Odes Indus. Co., Ltd.*, No. 3:21-CV-2180-X, 2024 WL 476967, at *3 (N.D. Tex. Feb. 6, 2024) (Starr, J.).

[16] One minor point about TSL's false advertising claim.  ENSA states that all five of these claims "are based on the same allegations."  Doc. 58 at 8. As pointed out by TSL in response, one of these five isn't—false advertising.  Doc. 62 at 17–18.  Despite ENSA's contention otherwise, a claim for false advertising is not "equally dispositive" of TSL's other claims.  A false advertising claim has a separate five-part framework as identified in *Pizza Hut, Inc. v. Papa John's Intern., Inc.*, 227 F.3d 489, 495 (5th Cir. 2000).  Therefore, the Court holds that ENSA did not affirmatively move for dismissal of TSL's false advertising claim because ENSA did not specifically cite to any case law related to a false advertising claim.  *Sindhi v. Raina*, 905 F.3d 327, 334 (5th Cir. 2018) ("Likewise, a litigant can waive an argument if he fails to cite authority to support his position.").  Nevertheless, had ENSA moved for dismissal of this claim, the Court would have denied it on the merits.

**B. Tortious-Interference-With-Prospective-Business-Relations Claim**

ENSA moves to dismiss TSL's tortious-interference-with-prospective-business-relations-claim for two reasons.[17]   First ENSA argues that dismissal is warranted because TSL has not pled that ENSA's actions are in fact "independently tortious" or "wrongful."[18]   Second, ENSA argues that dismissal is warranted because TLS does not allege with specificity any business relationship hindered by ENSA's actions.[19]   In response, TSL argues that its adequately pled that ENSA engaged in independently tortious conduct so long as one of their other claims, such as trademark infringement, false advertising, unfair competition, etc., survives dismissal.[20]   The Court agrees with ENSA's second argument—that TSL has failed to plead with specificity any business relationship hindered by ENSA's actions.

Under Texas law, a plaintiff pleading a tortious interference-with-prospective-business-relations claim must show:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.[21]

---

[17] Doc. 58 at 10–12.

[18] *Id.* at 11.

[19] Doc. 65 at 4–5.

[20] Doc. 62 at 22.

[21] *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

6

Courts in this Circuit (applying Texas law) require plaintiffs to plead the first element with specificity.[22]   For example, in *Pureshield,* the Eastern District of Texas dismissed a plaintiff's tortious interference with prospective relations claim where, on reasonable probability, the plaintiff stated simply that "[t]here was reasonable probability that Plaintiffs would have entered into a business relationship with third parties, including customers or business partners."[23] More aggressively, in *Corrosion Prevention*, the Southern District of Texas dismissed a tortious interference with prospective relations claim where the plaintiff named three companies, yet failed to allege "any facts showing what business relationship they expected to have with the listed businesses or pointed to a specific contract they allegedly lost because of" the other parties' actions.[24]

Similarly, here, TSL's complaint fails to allege what *specific* business relationship fell through as a result of ENSA's actions.  While the entirety of TLS's complaint is relevant to the issue, the most relevant portion on tortious interference with prospective relations occurs between paragraphs 107 and 112.  There, TLS simply states that ENSA's actions prevented it from "sell[ing] Rescue Kits to

---

[22] *Pureshield, Inc. v. Allied Bioscience, Inc.*, No. 4:20-CV-734-SDJ, 2021 WL 4492861, at *3 (E.D. Tex. Sept. 30, 2021); *Corrosion Prevention Techs. LLC v. Hatle*, No. 4:20-CV-2201, 2020 WL 6202690, at *4 (S.D. Tex. Oct. 22, 2020) (citing *Cooper v. Harvey*, 108 F.Supp.3d 463, 472 (N.D. Tex. 2015) (Boyle, J.)); *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 775 (S.D. Tex. Aug. 17, 2010); *I Love Omni, LLC v. Omnitrition Int'l, Inc.,* No. 3:16-CV-2410, 2017 WL 3086035, at *3 (N.D. Tex. July 20, 2017) (Fish, J.).

[23] *Pureshield,* 2021 WL 4492861, at *4 (quoting complaint).

[24] *Corrosion Prevention*, 2020 WL 6202690 at *5.

customers."[25]  On this claim, TLS's complaint almost mirrors the dismissed complaint in *Pureshield*, which simply stated that "[t]here was reasonable probability that Plaintiffs would have entered into a business relationship with third parties, including customers or business partners."[26]  Thus, TSL's complaint fails to meet the first element of a tortious-interference-with-prospective-business-relationship claim.

Therefore, the Court **DISMISSES WITHOUT PREJUDICE** TSL's tortious-interference-with-prospective-business-relationship claim.  If TSL wishes to pursue these claims, it must replead it within 28 days of the date of this order.

### C. Tortious-Interference-With-Contract Claim

ENSA moves to dismiss TSL's tortious interference with contract claim for three reasons.[27]  First, ENSA argues that TSL's tortious-interference-with-contract claim fails because TSL has not alleged the existence of a contract or specific terms of a contract.[28]  Second, ENSA denies that it could liable under a tortious interference with contract claim because any alleged interference by ENSA and Aegis took place *before* an alleged contract between TSL and Aegis.[29]  Third, ENSA argues that TSL fails to allege that Aegis breached its contract between it and Aegis.[30]  TSL disputes all points arguing that (1) it has alleged the existence of a contract between itself and

---

[25] Doc. 45 at 24 ¶ 108.

[26] *Pureshield,* 2021 WL 4492861, at *4 (quoting complaint) (internal quotation marks omitted).

[27] Doc. 58 at 12–13.

[28] *Id.* at 12.

[29] *Id.* at 12–13.

[30] *Id.* at 13.

Aegis, (2) it has alleged ENSA's interference within the relevant time period, and (3) it has alleged Aegis's breach of the contract between TSL and Aegis.[31]  The Court agrees with TSL.

In Texas, a plaintiff pleading a tortious-interference-with-contract claim must allege "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss."[32]  ENSA's argument that TSL has failed to allege the first element of a tortious-interference-with-contract claim, an existing contract, fails.  In making this argument, ENSA cites to *Rimkus Consulting Group, Inc. v. Cammarata*, which granted *summary judgment* in favor of the defendant because the plaintiff lacked *evidence* of an existing contract.[33]  Here, the parties are at the motion-to-dismiss stage of litigation, so TSL need only proffer an allegation of an agreement.  And it did.  In its complaint, TSL alleges not only that it entered into an agreement with Aegis, but also that ENSA was aware of that agreement's terms.[34]  Nothing more is needed to satisfy the first element of a tortious-interference-with-contract claim: the existence of a contract.

ENSA's second and third arguments fail for the same reason—each turn on questions of fact.  As to ENSA's argument that any alleged interference occurred

---

[31] Doc. 62 at 23–25.

[32] *Prudential Ins. Co. of Am. v. Fin. Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

[33] *Rimkus Consulting Group, Inc.*, 688 F. Supp. 2d at 674–75.

[34] Doc. 45 at 28.

9

before TSL and Aegis bound themselves via contract, TSL has alleged facts that ENSA's interference occurred after TSL and Aegis's contract.[35]  And as to ENSA's argument that TSL has not alleged Aegis breached TSL and Aegis's contract, TSL adequately pled that Aegis breached their contract.[36]  And despite ENSA's invitation otherwise, the Court won't look beyond TSL's alleged facts at this stage in the case.

### D. Copyright-Infringement Claim

ENSA and Aegis move to dismiss TSL's copyright-infringement claim arguing that ENSA lawfully purchased otherwise copyrighted materials from Aegis who had exercised its rights under the first sale doctrine.[37]  In response, TSL argues that the first sale doctrine does not apply because neither Aegis nor ENSA were buyers and that ENSA made other unlawful copies of TSL's materials.[38]  The Court agrees with TSL.

By statute, "[t]he Copyright Act vests in copyright holders several enumerated exclusive rights that they enjoy over their copyrighted works."[39]  But these rights aren't unlimited.[40]  Relevant here, Section 109 of the Copyright Act limits some rights of the original copyright holder if the original copyright holder sells a copy of the copyrighted work:

---

[35] *Id.* at 16–17.

[36] *Id.* at 27–28.

[37] Doc. 58 at 13–14.

[38] Doc. 62 at 26–29.

[39] *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 793 (5th Cir. 2017) (citing 17 U.S.C. § 106).

[40] *Id.*

> Notwithstanding the provisions of section 106(3), the owner of a particular copy or phonorecord lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord.[41]

This is known as the "first sale doctrine."[42]   Under the first sale doctrine, "[w]hen a copyright owner transfers or authorizes transfer of a copy or phonorecord embodying his copyright, he does not surrender his copyright, but he does mostly surrender control of the material object."[43]   More specifically, "[t]he copyright owner will not be heard to complain of his transferee's transferring the material object in a way that might otherwise foul the exclusive right to distribute."[44]   Importantly, this Court has previously held that "the first-sale doctrine [does] not apply if [a party] simply licensed the software."[45]

Here, TSL has adequately pled facts showing that the first sale doctrine does not apply.[46]   Specifically, despite ENSA's contention that a condition-less sale occurred from TSL to Aegis, TSL alleges that, upon its sale to Aegis, it "strictly prohibited Train-the-Trainer certifications from being transferred or used for other purposes."[47]   Sure, while ENSA disputes whether TSL sold (condition-less) or licensed

---

[41] 17 U.S.C. § 109(a).

[42] *Geophysical Serv.*, 850 F.3d at 793.

[43] *Id.* at 793–94.

[44] *Id.* at 794.

[45] *MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g, Inc.*, 422 F. Supp. 2d 724, 733 (N.D. Tex. 2006) (Means, J.).

[46] Doc. 45 at 14.

[47] *Id.* at 15.

11

(conditions attached) its training kits to Aegis, resolving the nature of TSL and Aegis's transaction is improper at this time.[48]

### E. Civil-Conspiracy Claim

ENSA and Aegis move to dismiss TSL's civil-conspiracy claim arguing that TSL has failed to adequately allege that ENSA and Aegis had the specific intent to commit an unlawful act.[49]   In response, TSL argues that it has alleged ENSA and Aegis's specific intent to commit an unlawful act by the mere presence of its other claims in this suit.[50]  The Court agrees with TSL.

In Texas, a plaintiff must plead the following five elements to succeed on a civil-conspiracy claim:

> (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result.[51]

ENSA argues that TSL has not satisfied the fourth element of a civil-conspiracy claim—that ENSA and Aegis conspired to commit an *unlawful* act.  ENSA's argument fails.  TSL has adequately pled a host of other claims, such as copyright infringement and tortious interference with contract.  The fact that those claims now survive

---

[48] *MGE UPS Sys., Inc.*, 422 F. Supp. 2d at 733 (denying motion for summary judgment because the nature of the parties' transaction was a disputed issue of material fact).

[49] Doc. 58 at 14–15.

[50] Doc. 62 at 29–30.

[51] *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).

dismissal is more than enough for TSL to satisfy the fourth element of a civil-conspiracy claim—unlawful acts.[52]  Therefore, dismissal would be improper.

### F.  Breach-of-Contract Claim

Aegis moves to dismiss TSL's breach-of-contract claim arguing that TSL has not pled the first element of its breach-of-contract claim: existence of a valid contract.[53]  In response, TSL argues either that (1) a valid contract existed after an email exchange between the parties or (2) an implied contract existed based upon the parties' conduct.  The Court agrees with neither party, yet TSL's claim survives dismissal.

Under Texas law, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."[54]  Aegis's argument that no contract existed fails.  TSL's complaint recounts an email exchange between a TSL employee and an Aegis employee.[55]  In that email exchange, Aegis and TSL allegedly agreed to an exchange where TSL offered to train an Aegis employee (Aaron Foster), supply training manuals, and supply training kits so Aegis could train future employees in

---

[52] *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140–41 (Tex. 2019) ("We have repeatedly called civil conspiracy a 'derivative tort,' meaning it depends on some underlying tort or other illegal act. Our use of the word 'derivative' in this context means a civil conspiracy claim is connected to the underlying tort and survives or fails alongside it.").

[53] Doc. 60 at 14–17.

[54] *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (applying Texas law).

[55] Doc. 45 at 15.

exchange for paying TSL money.[56]   While Aegis disputes that this exchange constitutes a valid contract, the limited record at this stage makes a sufficient showing that there is an agreement.[57]

Aegis's argument that no breach occurred (element three) fails as well.  TSL alleged that Aegis breached the contract by sharing Train-the-Training materials to a third-party, which constitutes breach.[58]  "[W]hether the breaching conduct occurred is a question of fact."[59]  Therefore, the Court holds that TSL has plausibly alleged its breach-of-contract claim.

### G. Fraud Claims

Aegis moves to dismiss TSL's fraud-by-nondisclosure claim, arguing that Aegis had no duty to disclose how it was going to use Train-the-Trainer materials or how it was going to be reimbursed by ENSA.[60]  In response, TSL argues that, by agreeing to contract with TSL, Aegis effectively disclosed that it would be using the Train-the-Trainer program to train its own employees and not resell those kits to another party.[61]  The Court agrees with Aegis.

In Texas, a plaintiff pleading a fraud-by-non-disclosure claim must allege that:

---

[56] *Id.* at

[57] "Contract formation is a question of fact under Texas law."  *J.D. Fields & Co. v. U.S. Steel Int'l, Inc.*, 426 F. App'x 271, 277 (5th Cir. 2011); *Ent. Merch. Tech., L.L.C. v. Houchin*, 720 F. Supp. 2d 792, 796 (N.D. Tex. 2010) (McBryde, J.) (denying summary judgment fact dispute regarding a contract's validity).

[58] Doc. 45 at 14–27.

[59] *Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 127 (5th Cir. 2017) (applying Texas law).

[60] Doc. 60 at 11–13.

[61] Doc. 63 at 13–16.

> (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury.[62]

Notably, fraud by nondisclosure occurs only where "a party has a duty to disclose certain information and fails to disclose it"[63] such as in the case of "a fiduciary or confidential relationship" between the parties.[64]

Here, TSL's complaint fails fraud-by-nondisclosure's heightened pleading standard because the facts surrounding the nondisclosure (specifically, the partial disclosure) lack particularity. Sure, as discussed earlier in the Court's breach-of-contract analysis, TSL's complaint plausibly pled enough detail surrounding the parties' agreement to enter into a valid contract to survive a challenge under Rule 12. But TSL does not plead enough particularity to survive a challenge under Rule 9. Specifically, for a valid fraud-by-nondisclosure claim, TSL must state with particularity fact surrounding Aegis's partial disclosure. But by simply stating that Aegis "disclos[ed] its intent to purchase Train-the-Trainer" materials,[65] TSL falls short in this regard because TSL's complaint lacks the "who, what, when, where, and why" behind Aegis's alleged nondisclosure,[66] or rather, TSL's complaint lacks

---

[62] *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019).

[63] *CBE Grp., Inc. v. Lexington L. Firm*, 993 F.3d 346, 353 (5th Cir. 2021) (applying Texas law).

[64] *Bay Colony, Ltd. v. Trendmaker, Inc.*, 121 F.3d 998, 1004 n.6 (5th Cir. 1997).

[65] Doc. 45 at 26.

[66] *In re Life Partners Holdings*, 926 F.3d 103, 117 (5th Cir. 2019).

15

specificity as to *what* the non-disclosure was, when it happened, where it happened, who (agent(s)) made the nondisclosure, and why it made it. TSL's detrimental lack of particularly in pleading facts related to its fraud-by-nondisclosure claim also results in a dismissal of TSL's fraudulent-inducement claim because both claims revolve around the same facts.

Therefore, the Court **DISMISSES WITHOUT PREJUDICE** both TSL's fraud-by-nondisclosure and fraudulent inducement claim. If TSL wishes to pursue these claims, it must replead it within 28 days of the date of this order.

## IV. Conclusion

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the motions. As a result, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff Tech Safety Lines, Inc.'s ("TSL") fraud-by-nondisclosure and fraudulent-inducement claims. If TSL wishes to pursue these two claims, it must file an amended complaint no later than 28 days from the date of this order. All other claims remain.

**IT IS SO ORDERED** this 15th day of August, 2024.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE